T.C. Memo. 2009-106

UNITED STATES TAX COURT

BLAKE HYUN SEO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21622-05.                    Filed May 19, 2009.

Blake Hyun Seo, pro se.

<u>Richard J. Hassebrock</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following defi-
ciencies in, and additions to, petitioner's Federal income tax
(tax):

| Year | Deficiency | Additions to Tax | | |
| | | Sec. 6651(a)(1)[1] | Sec. 6651(a)(2) | Sec. 6654(a) |
| --- | --- | --- | --- | --- |
| 2000 | $251,430 | $56,571.75 | * | $583.14 |
| 2001 | 132,318 | 29,771.55 | * | 5,287.91 |
| 2002 | 51,412 | 11,567.70 | * | 1,718.05 |

*Amount to be determined at a later date pursuant to sec. 6651(a)(2) and (c).

The issues remaining for decision are:[2]

(1) Does petitioner have for each of his taxable years 2000, 2001, and 2002 unreported income as determined by respondent under the bank deposits method? We hold that he does to the extent stated herein.

(2) Is petitioner entitled for each of his taxable years 2000, 2001, and 2002 to deduct certain gambling losses? We hold that he is not.

(3) Does petitioner have unreported interest income for each of his taxable years 2000 and 2001? We hold that he does.

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The notice of deficiency involved in this case (notice) pertains to petitioner's taxable years 2000, 2001, 2002, and 2003. Petitioner did not properly place at issue any of the determinations in that notice for his taxable year 2003.

In addition to the issues remaining for decision for petitioner's taxable years 2000, 2001, and 2002 that are listed below in the text, there are other questions relating to certain determinations in the notice for those years that are computational in that their resolution flows automatically from our resolution of certain of the issues that we address herein.

(4) Is petitioner liable for each of his taxable years 2000, 2001, and 2002 for the addition to tax under section 6651(a)(1)? We hold that he is.

(5) Is petitioner liable for each of his taxable years 2000, 2001, and 2002 for the addition to tax under section 6651(a)(2)? We hold that he is.

(6) Is petitioner liable for each of his taxable years 2000, 2001, and 2002 for the addition to tax under section 6654(a)? We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found except as stated below.[3]

Petitioner's address shown in the petition in this case was in Ohio.

Bank Accounts

During the years at issue, petitioner maintained in his name or in the name of an entity (discussed below) certain bank accounts over which he had control and/or signature authority.

During 2000, petitioner maintained at Huntington National Bank two checking accounts in his name (petitioner's checking account No. 5210 and petitioner's checking account No. 4730) and

_____

[3]In violation of Rule 143(b), petitioner alleges on brief various facts (petitioner's alleged facts) not stipulated by the parties and not otherwise supported by the record in this case. We shall not consider or rely on petitioner's alleged facts.

a savings account (petitioner's savings account) in his name. During 2001 and 2002, petitioner maintained petitioner's checking account No. 4730 and petitioner's savings account.

During 2000, petitioner maintained at Fifth Third Bank a checking account (Seo & Leonard account) in the name of Seo & Leonard Co. (Seo & Leonard).

During 2001, petitioner maintained at Fifth Third Bank a bank account (petitioner's Fifth Third Bank account) in his name.[4]

During 2002, petitioner maintained at Huntington National Bank a money management account (Amnesia Lounge account) in the name of Amnesia Lounge, LLC (Amnesia Lounge), an Ohio limited liability company that petitioner formed on December 1, 2001.[5]

Certain Deposits Into Petitioner's Bank Accounts

During 2000, petitioner deposited a total of $338,472.32[6]

---

[4]The record does not disclose the type of account that petitioner maintained at Fifth Third Bank in his name.

[5]We shall refer to all of the above-described accounts over which petitioner had control and/or signature authority (i.e., petitioner's checking account No. 5210, petitioner's checking account No. 4730, petitioner's savings account, the Seo & Leonard account, petitioner's Fifth Third Bank account, and the Amnesia Lounge account) as petitioner's bank accounts.

[6]The parties made mathematical errors in stipulating certain of the total amounts of monthly deposits into petitioner's bank accounts during each of the years at issue. Those erroneous stipulations are clearly contrary to the facts that we have found are established by the record in this case. We have found the correct total amounts deposited into petitioner's bank accounts

(continued...)

into petitioner's checking account No. 5210.  Included in that total amount were the following deposits that petitioner claims are not includible in his income:

| Date of Deposit | Description and Payor of Item Deposited |
|---|---|
| 1/7/00 | Check for $25 issued by First USA and payable to petitioner |
| 1/14/00 | Check for $450 issued by Eric Chang (Mr. Chang) and payable to petitioner |
| 1/14/00 | Check for $1,713.83 issued by Countrywide Home Loans, Inc. (Countrywide), and payable to petitioner |
| 1/18/00 | Check for $83.62 issued by Farmers Insurance Group of Cos. (Farmers Insurance) and payable to petitioner |
| 1/18/00 | Check for $72,084.96 issued by Midland Title Security, Inc. (Midland Title), and payable to Stephen T. Hutchinson |
| 1/25/00 | Check for $30,000 issued by Beneficial and payable to petitioner and Harry Wood (Mr. Wood) |
| 1/31/00 | Check for $1,000 issued by CMACO Investments, Inc. (CMACO Investments), and payable to Seo & Leonard |
| 2/14/00 | Check for $25 issued by First USA and payable to petitioner |
| 2/15/00 | Check for $269.86 issued by Farmers Insurance and payable to Innova Funding, Inc. (Innova Funding) |
| 2/15/00 | Check for $19.21 issued by The Dispatch Printing Co. (Dispatch Printing) and payable to petitioner |
| 2/16/00 | Check for $25,000 issued by Firelands Federal Credit Union (Firelands) and payable to petitioner |
| 2/18/00 | Check for $152.66 issued by Farmers Insurance and payable to petitioner |
| 3/9/00 | Check for $151.76 issued by Farmers Insurance and payable to petitioner |

[6](...continued)
during each of the years at issue that are established by the record.  See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989).

| Date of Deposit | Description and Payor of Item Deposited |
|---|---|
| 4/5/00 | Check for $70,000 issued by Clyde-Findlay Area Credit Union (Clyde-Findlay) and payable to petitioner[1] |
| 4/19/00 | Check for $168.95 issued by ABN-AMRO Mortgage Group, Inc. (ABN-AMRO), and payable to petitioner[2] |
| 4/19/00 | Check for $550 issued by Franklin County, Ohio (Franklin County), and payable to Seo Investment Group[3] |
| 4/27/00 | Check for $14,000 issued by Mr. Wood and Cynthia Wood (Ms. Wood) and payable to petitioner[4] |

[1]On Apr. 5, 2000, petitioner deposited into petitioner's checking account No. 5210 only $60,100 of the check for $70,000 issued by Clyde-Findlay.

[2]The check for $168.95 issued by ABN-AMRO that petitioner deposited into petitioner's checking account No. 5210 on Apr. 19, 2000, bears the following computer-generated notation: "FOR PAYMENT OF ESCROW TO MORTGAGOR".

[3]The check for $550 issued by Franklin County that petitioner deposited into petitioner's checking account No. 5210 on Apr. 19, 2000, bears the following computer-generated notation: "WARRANT NUMBER 2000144137".

[4]The check for $14,000 issued by Mr. Wood and Ms. Wood that petitioner deposited into petitioner's checking account No. 5210 on Apr. 27, 2000, bears the following handwritten notation: "Loan on Houses".

During 2000, a total of $228,876.73 was deposited into the Seo & Leonard account, all of which petitioner claims is not includible in his income.

During 2000, petitioner deposited a total of $186,926.97 into petitioner's checking account No. 4730. Included in that total amount were the following deposits that petitioner claims are not includible in his income:

| Date of Deposit | Description and Payor of Item Deposited |
|---|---|
| 6/19/00 | Check for $10 issued by Farmers Insurance and payable to petitioner |
| 6/19/00 | Check for $47.70 issued by Farmers Insurance and payable to petitioner |
| 6/19/00 | Check for $214.44 issued by Farmers Insurance and payable to petitioner |
| 7/7/00 | Check for $449.44 issued by Ricart and payable to Leonard and Associates |
| 7/10/00 | Check for $10 issued by Farmers Insurance and payable to petitioner |
| 7/10/00 | Check for $19.87 issued by Farmers Insurance and payable to petitioner |
| 8/11/00 | Check for $608.16 issued by ABN-AMRO and payable to petitioner[1] |
| 8/25/00 | Check for $450.61 issued on behalf of petitioner by the Direct Pay Service of Huntington National Bank and payable to Standard Federal[2] |
| 9/7/00 | Check for $25,000 issued by Firelands and payable to petitioner |
| 9/15/00 | 20 checks, each for $25, issued by First USA and payable to petitioner |
| 9/19/00 | Three checks, each for $450.61, issued by ABN-AMRO and payable to petitioner[3] |
| 9/29/00 | Check for $26 issued by Paul M. Herbert, Civil Account, Clerk of the Court, Franklin County Municipal Court, and payable to petitioner |
| 10/18/00 | Check for $599.68 issued by Ricart and payable to petitioner |
| 11/1/00 | Check for $47,189.66 issued by Leonard and Associates and payable to petitioner |
| 11/7/00 | Check for $65 issued by Charter Bank and payable to petitioner[4] |
| 11/7/00 | Check for $15.37 issued by First USA and payable to petitioner |
| 11/30/00 | Check for $18,000 issued by, and payable to, petitioner |
| 12/14/00 | Check for $33,562.58 issued by Old Republic and payable to LA Construction |
| 12/21/00 | Check for $200 issued by Allen M. Lo (Mr. Lo) and Erika E.K. Lo (Ms. Lo) and payable to petitioner[5] |
| 12/26/00 | Check for $4,100 issued by Leonard and Associates and payable to petitioner |

[1]The check for $608.16 issued by ABN-AMRO that petitioner deposited into petitioner's checking account No. 4730 on Aug. 11, 2000, bears the following computer-generated notation: "FOR PAYMENT OF ESCROW TO MORTGAGOR".

[2]The funds that Direct Bill Pay Service of Huntington National Bank used to issue the check for $450.61 that petitioner deposited into petitioner's checking account No. 4730 on Aug. 25, 2000, were obtained from that account on May 1, 2000.

[3]The three checks, each for $450.61, issued by ABN-AMRO that petitioner deposited into petitioner's checking account No. 4730 on Sept. 19, 2000, bear the following computer-generated notation: "FOR MISAPPLICATION REVERSAL".

[4]The check for $65 issued by Charter Bank that petitioner deposited into petitioner's checking account No. 4730 on Nov. 7, 2000, bears the following computer-generated notation: "TAX FEE REFUND".

[5]The check for $200 issued by Mr. Lo and Ms. Lo that petitioner deposited into petitioner's checking account No. 4730 on Dec. 21, 2000, bears the following handwritten notation: "Christmas 2000".

During 2001, petitioner deposited a total of $462,873.14 into petitioner's checking account No. 4730. Included in that total amount were the following deposits that petitioner claims are not includible in his income:

| Date of Deposit | Description and Payor of Item Deposited |
| --- | --- |
| 1/26/01 | Check for $4,150 issued by Farmers Insurance and payable to petitioner, AMRO Mortgage Group, and Leonard and Associates |
| 2/7/01 | Check for $3,056.17 issued by Farmers Insurance and payable to petitioner and Franklin Art Glass Studios, Inc. |
| 2/8/01 | Check for $1,592.82 issued by M&I Bank and payable to petitioner[1] |
| 3/2/01 | Check for $155.42 issued by the City of Columbus and payable to petitioner[2] |
| 3/6/01 | Transfer of $15,295.48 from a bank account not disclosed by the record[3] |
| 3/6/01 | Check for $500 issued by Farmers Insurance and payable to petitioner |
| 3/19/01 | Check for $482.71 issued by Maguire and Schneider and payable to petitioner[4] |
| 4/4/01 | Check for $43.31 issued by Farmers Insurance and payable to petitioner |

| Date of Deposit | Description and Payor of Item Deposited |
|---|---|
| 4/4/01 | Check for $500 issued by HER, Inc. (HER), and payable to petitioner |
| 4/5/01 | Check for $2 issued by Old Republic and payable to petitioner |
| 5/1/01 | Check for $741 issued by ABN-AMRO and payable to petitioner[5] |
| 5/31/01 | Check for $13,000 issued by Mr. Chang and payable to petitioner |
| 6/1/01 | Check for $13,000 issued by Firelands and payable to petitioner |
| 6/6/01 | Check for $177.47 issued by ABN-AMRO and payable to petitioner[6] |
| 6/21/01 | Check for $522.11 issued by Farmers Insurance and payable to petitioner |
| 7/11/01 | Check for $228.61 issued by Farmers Insurance and payable to petitioner |
| 7/27/01 | Check for $2,000 issued by Mr. Chang and payable to petitioner |
| 8/15/01 | Cash of $5,000 |
| 8/15/01 | Check for $5,000 issued by Bank One, on behalf of Mr. Chang, and payable to petitioner |
| 9/4/01 | Check for $31.02 issued by United Guaranty and payable to ABN-AMRO or petitioner |
| 9/27/01 | Check for $100 issued by Mr. Lo and Ms. Lo and payable to petitioner[7] |
| 12/5/01 | Cash of $9,000 |
| 12/12/01 | Cash of $9,980 |
| 12/13/01 | Cash of $9,980 |

[1]The check for $1,592.82 issued by M&I Bank that petitioner deposited into petitioner's checking account No. 4730 on Feb. 8, 2001, bears the following computer-generated notation: "OVERPAY-MENT".

[2]The check for $155.42 issued by the City of Columbus that petitioner deposited into petitioner's checking account No. 4730 on Mar. 2, 2001, bears the following computer-generated notation: "WARRANT TO THE CITY TREASURER".

[3]The parties stipulated that the deposit of $15,295.48 into petitioner's checking account No. 4730 on Mar. 6, 2001, was a "Transfer from [petitioner's checking] Account 4730". That stipulation is clearly contrary to the facts that we have found are established by the record, and we shall disregard it. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). The record establishes, and we have found, that on Mar. 6, 2001, there was a transfer of $15,295.48 into petitioner's checking account No. 4730, and not a transfer of that amount from that account.

[4]The check for $482.71 issued by Maguire and Schneider that petitioner deposited into petitioner's checking account No. 4730 on Mar. 19, 2001, bears the following handwritten notation: "Refund".

[5]The check for $741 issued by ABN-AMRO that petitioner deposited into petitioner's checking account No. 4730 on May 1, 2001, bears the following computer-generated notation: "FOR PAYMENT OF MISCELLANEOUS ESCROW".

[6]The check for $177.47 issued by ABN-AMRO that petitioner deposited into petitioner's checking account No. 4730 on June 6, 2001, bears the following computer-generated notation: "FOR PAYMENT OF ESCROW TO MORTGAGOR".

[7]The check for $100 issued by Mr. Lo and Ms. Lo that petitioner deposited into petitioner's checking account No. 4730 on Sept. 27, 2001, bears the following handwritten notation: "B-day!"

During 2001, petitioner deposited a total of $8,868.51 into petitioner's Fifth Third Bank account, none of which petitioner claims is excludable from his income.

During 2002, petitioner deposited a total of $163,688.31 into petitioner's checking account No. 4730.  Included in that total amount were the following deposits that petitioner claims are not includible in his income:

| Date of Deposit | Description and Payor of Item Deposited |
| --- | --- |
| 1/31/02 | Check for $317.44 issued by Farmers Insurance and payable to petitioner |
| 1/31/02 | Check for $124 issued by Paul M. Herbert, Clerk of Court, Criminal/Bail Account, Franklin County Municipal Court, and payable to petitioner |
| 3/28/02 | Check for $270.13 issued by Farmers Insurance and payable to petitioner |
| 4/9/02 | Check for $5.42 issued by American Electric Power and payable to petitioner[1] |
| 12/10/02 | Check for $377.11 issued by Farmers Insurance and payable to petitioner |
| 12/27/02 | Check for $100 issued by Mr. Lo and Ms. Lo and payable to petitioner[2] |

[1]The check for $5.42 issued by American Electric Power that petitioner deposited into petitioner's checking account No. 4730 on Apr. 9, 2002, bears the following computer-generated notation:

"REFUNDING FINAL BILL CREDIT BALANCE ON ACCOUNT".
   [2]The check for $100 issued by Mr. Lo and Ms. Lo that petitioner deposited into petitioner's checking account No. 4730 on Dec. 27, 2002, bears the following handwritten notation:  "X-mas!"

During 2002, petitioner deposited a total of $28,685 into petitioner's Amnesia Lounge account.  Included in that total amount were the following deposits that petitioner claims are not includible in his income:

| Date of Deposit | Description and Payor of Item Deposited |
|---|---|
| 1/8/02 | Check for $1,000 issued by petitioner and payable to Huntington |
| 2/12/02 | Check for $2,100 issued by petitioner and payable to Amnesia Lounge |
| 2/19/02 | Check for $2,000 issued by petitioner and payable to Amnesia Lounge |

## Certain Loans to Petitioner

On December 23, 1999, petitioner borrowed a total of $60,000 from Innova Funding as part of an agreement to refinance certain real property (refinancing agreement) that petitioner owned in Ohio.  After using most of the proceeds of that loan to pay certain of his obligations relating to the refinancing of that property, petitioner received cash of $13,643.06.  Midland Celtic Title acted as the settlement agent for purposes of the refinancing agreement.

On October 31, 2000, petitioner borrowed $71,550 from Innova Funding.

On August 15, 2001, petitioner borrowed $10,000 from Mr. Chang.

On December 26, 2001, petitioner borrowed $50,000 from Reyanh D. Phung (Reyanh Phung). On a date not disclosed by the record in December 2001, Amnesia Lounge and Reyanh Phung entered into a security agreement (Amnesia Lounge security agreement) with respect to that loan. That agreement provided in pertinent part:

> THIS SECURITY AGREEMENT * * * is made * * * between Amnesia Lounge, LLC, an Ohio limited liability company, ("Debtor") and Reyanh D. Phung ("Secured Party").
>
> This Security Agreement is entered into with respect to a loan * * * made by Secured Party to the sole member of Debtor which is evidenced by a promissory note * * * of December 26, 2001 in the principal amount of Fifty Thousand and 00/100 Dollars ($50,000.00).

Respondent's Examination of Petitioner's
Taxable Years 2000, 2001, and 2002

Petitioner did not file a tax return, and did not pay any tax, for any of his taxable years 2000, 2001, and 2002.

Respondent assigned a revenue agent (respondent's revenue agent) to examine petitioner's taxable years 2000, 2001, and 2002. During his examination of petitioner's taxable years 2000, 2001, and 2002, respondent's revenue agent sent a letter to petitioner in which respondent's revenue agent indicated that petitioner must file a tax return for each of his taxable years 2000, 2001, and 2002 or provide respondent's revenue agent with an explanation of why he was not required to file a tax return

for each of those years.  Petitioner did not respond to that letter.

Because petitioner failed to cooperate with respondent's revenue agent, respondent's revenue agent issued summonses on behalf of respondent to Huntington National Bank and Fifth Third Bank in order to obtain certain documents (bank account documents) relating to any bank accounts over which petitioner had control or signature authority, including copies of bank statements, checks deposited into those accounts, and deposit slips.

Huntington National Bank and Fifth Third Bank provided to respondent's revenue agent the summonsed bank account documents. Respondent's revenue agent analyzed those documents in order to reconstruct petitioner's income for each of his taxable years 2000, 2001, and 2002 under the bank deposits method.  In conducting that analysis, respondent's revenue agent took into account any deposits that were made during those years into petitioner's bank accounts.[7]  Respondent's revenue agent used the bank account documents to determine which deposits should be, and which deposits should not be, included in petitioner's income for each

---

[7]In calculating petitioner's income under the bank deposits method for each of his taxable years 2000, 2001, and 2002, respondent's revenue agent included only the amounts that were deposited into the bank accounts over which petitioner had control and/or signature authority during each of the years at issue.  In the event that petitioner deposited only a portion of a check into one of those accounts, respondent's revenue agent included in petitioner's income only the portion deposited and did not include in petitioner's income the portion not deposited.

of petitioner's taxable years 2000, 2001, and 2002.[8]

Respondent prepared a substitute for return for each of petitioner's taxable years 2000 (substitute for return for 2000), 2001 (substitute for return for 2001), and 2002 (substitute for return for 2002). Each of those substitutes for returns consisted of the following documents: (1) IRC Section 6020(b) Certification (section 6020(b) certification), (2) a transcript of petitioner's account for the taxable year for which respondent prepared the substitute for return, (3) Form 4549, Income Tax Examination Changes, and (4) Form 886-A, Explanation of Items. Each section 6020(b) certification certified that the pages attached thereto constituted a valid substitute for return under section 6020(b).

The substitute for return for 2000 showed, inter alia, (1) total income of $726,789 consisting of (a) income of $685,341 that respondent determined under the bank deposits method,[9] (b) income of $40,300 that petitioner received from certain casinos, and (c) "Interest Income" of $1,148, (2) a mortgage

_____

[8]For example, respondent's revenue agent used the bank account documents to determine whether a deposit into one of petitioner's bank accounts during the years at issue was a transfer from another one of those accounts. In reconstructing petitioner's income for each of those years, respondent's revenue agent excluded any deposit that he determined was such a transfer.

[9]Respondent determined that $59,207 of the $685,341 of income that respondent determined under the bank deposits method for petitioner's taxable year 2000 was "Rents Received".

interest deduction of $84,176, and (3) total tax of $251,430.
The 2000 substitute for return also showed that petitioner's
total tax for his taxable year 1999 was $9,825.

The substitute for return for 2001 showed, inter alia,
(1) total income of $469,187 consisting of (a) income of $468,042
that respondent determined under the bank deposits method[10] and
(b) "Interest Income" of $1,145, (2) a mortgage interest deduc-
tion of $109,489, and (3) total tax of $132,318.

The substitute for return for 2002 showed, inter alia,
(1) total income of $183,279 that respondent determined under the
bank deposits method,[11] (2) a mortgage interest deduction of
$27,587, and (3) total tax of $51,412.

Notice of Deficiency

On August 16, 2005, respondent issued to petitioner a notice
with respect to, inter alia, his taxable years 2000, 2001, and
2002.[12]

In the notice, respondent determined for petitioner's
taxable year 2000 (1) that petitioner had total unreported income
of $726,789 consisting of (a) income of $685,341 that respondent

---

[10]Respondent determined that $67,740 of the $468,042 of
income that respondent determined under the bank deposits method
for petitioner's taxable year 2001 was "Rents Received".

[11]Respondent determined that $22,437 of the $183,279 that
respondent determined under the bank deposits method for peti-
tioner's taxable year 2002 was "Rents Received".

[12]See supra note 2.

determined under the bank deposits method,[13] (b) income of $40,300 from "gambling winnings", and (c) "Interest Income" of $1,148 and (2) that petitioner is entitled to deduct mortgage interest of $84,176. In determining petitioner's income under the bank deposits method for his taxable year 2000, respondent did not include the deposits of (1) the check for $47,189.66 issued by Leonard and Associates that petitioner deposited into petitioner's checking account No. 4730 on November 1, 2000, and (2) the check for $18,000 issued by, and payable to, petitioner that he deposited into that account on November 30, 2000.

In the notice, respondent determined for petitioner's taxable year 2001 (1) that petitioner had total unreported income of $469,187 consisting of (a) income of $468,042[14] that respondent determined under the bank deposits method and (b) "Interest Income" of $1,145 and (2) that petitioner is entitled to deduct mortgage interest of $109,489.

In the notice, respondent determined for petitioner's taxable year 2002 (1) that petitioner had total unreported income of $183,279 that respondent determined under the bank deposits method[15] and (2) that petitioner is entitled to deduct mortgage interest of $27,587. In determining petitioner's income under

---

[13]See *supra* note 9.

[14]See *supra* note 10.

[15]See *supra* note 11.

the bank deposits method for his taxable year 2002, respondent did not include the deposits of (1) the check for $1,000 issued by petitioner that he deposited into petitioner's Amnesia Lounge account on January 8, 2002, (2) the check for $2,100 issued by petitioner that he deposited into that account on February 12, 2002, and (3) the check for $2,000 issued by petitioner that he deposited into that account on February 19, 2002.[16]

In the notice, respondent also determined that petitioner is liable for each of his taxable years 2000, 2001, and 2002 for the additions to tax under sections 6651(a)(1) and (2) and 6654(a).

OPINION

Petitioner bears the burden of proving error in the determinations for each of his taxable years 2000, 2001, and 2002 that

---

[16]The parties stipulated that respondent determined in the notice that the following checks "represented taxable income to the petitioner":  (1) The check for $1,000 issued by petitioner that he deposited into petitioner's Amnesia Lounge account on Jan. 8, 2002, (2) the check for $2,100 issued by petitioner that he deposited into that account on Feb. 12, 2002, and (3) the check for $2,000 issued by petitioner that he deposited into that account on Feb. 19, 2002.  That stipulation is clearly contrary to the facts that we have found are established by the record, and we shall disregard it.  See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. at 195.  The record establishes, and we have found, that respondent did not include in petitioner's income for his taxable year 2002 (1) the check for $1,000 issued by petitioner that he deposited into petitioner's Amnesia Lounge account on Jan. 8, 2002, (2) the check for $2,100 issued by petitioner that he deposited into that account on Feb. 12, 2002, and (3) the check for $2,000 issued by petitioner that he deposited into that account on Feb. 19, 2002.

remain at issue.[17]  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Before turning to the issues presented, we shall evaluate certain of the evidence on which the parties rely.  In support of his position with respect to each of the issues presented, petitioner relies primarily on his own testimony.  We found that testimony to be in certain material respects general, vague, conclusory, uncorroborated, questionable, and/or self-serving. We are not required to, and we shall not, rely on petitioner's testimony in order to establish his respective positions with respect to the issues presented.  See, e.g., <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).

In support of respondent's position with respect to each of the issues presented, respondent relies on, inter alia, the testimony of respondent's revenue agent.  We found respondent's revenue agent to be credible.

<u>Unreported Income Under the Bank Deposits Method</u>

In the notice, respondent determined that petitioner has unreported income calculated under the bank deposits method for

---

[17]Petitioner does not claim that the burden of proof shifts to respondent under sec. 7491(a).  In any event, petitioner has failed to establish that he satisfies the requirements of sec. 7491(a)(1) and (2).  On the record before us, we find that the burden of proof does not shift to respondent under sec. 7491(a).

each of his taxable years 2000, 2001, and 2002.[18]  At trial and/or on brief, petitioner disputed only certain of the deposits that respondent determined to be income under that method.

We turn first to what we understand to be petitioner's position that all of the deposits during 2000 into the Seo & Leonard account over which petitioner had control and/or signature authority are not includible in his income because those deposits belonged to his brother-in-law, and not to him.  The only evidence that petitioner presented to establish that position was his own testimony on which we are unwilling to rely.  On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposits during 2000 totaling $228,876.73 into the Seo & Leonard account over which he had control and/or signature authority are not includible in his income for that year.

We turn now to petitioner's position that certain deposits into petitioner's bank accounts during each of the years at issue are not includible in his income for each of those years because each of those deposits constituted one of the following:  (1) A withdrawal from, or a check drawn on, one of petitioner's bank accounts, (2) a personal loan to petitioner or the repayment of a personal loan that he had made to another person, (3) a refund of petitioner's moneys held in an escrow account, (4) a refund of

---

[18]See supra note 7.

other moneys of petitioner, (5) a gift to petitioner, (6) a cash advance to petitioner from a credit card company, (7) proceeds that petitioner received with respect to an insurance claim, (8) proceeds that petitioner received from the refinancing of certain real property, (9) a transfer from one of petitioner's bank accounts to another of his accounts, (10) proceeds that petitioner received from a home equity line of credit, or (11) a check payable to another person and drawn on the same account into which it was deposited.

Withdrawals From, and Checks Drawn
On, Petitioner's Bank Accounts

It is petitioner's position that respondent erroneously included in petitioner's income certain withdrawals from, and checks drawn on, petitioner's bank accounts.  On the record before us, we reject that argument.  That is because respondent calculated petitioner's income under the bank deposits method for each of the years at issue solely on the basis of deposits into the accounts over which petitioner had control and/or signature authority during each of those years, and not on the basis of withdrawals from, and checks drawn on, those accounts.

Alleged Personal Loans

It is petitioner's position that the following deposits are not includible in his income because those deposits represented personal loans to him or the repayment of personal loans that he had made to others:

| Date of Deposit | Account Into Which Deposit Was Made | Item Deposited |
|---|---|---|
| 1/14/00 | Petitioner's checking account No. 5210 | Check for $450 issued by Mr. Chang and payable to petitioner |
| 1/25/00 | Petitioner's checking account No. 5210 | Check for $30,000 issued by Beneficial and payable to petitioner and Mr. Wood |
| 2/16/00 | Petitioner's checking account No. 5210 | Check for $25,000 issued by Firelands and payable to petitioner |
| 4/5/00 | Petitioner's checking account No. 5210 | Check for $70,000 issued by Clyde-Findlay and payable to petitioner |
| 4/27/00 | Petitioner's checking account No. 5210 | Check for $14,000 issued by Mr. Wood and Ms. Wood and payable to petitioner |
| 9/7/00 | Petitioner's checking account No. 4730 | Check for $25,000 issued by Firelands and payable to petitioner |
| 11/1/00 | Petitioner's checking account No. 4730 | Check for $47,189.66 issued by Leonard and Associates and payable to petitioner |
| 12/26/00 | Petitioner's checking account No. 4730 | Check for $4,100 issued by Leonard and Associates and payable to petitioner |
| 5/31/01 | Petitioner's checking account No. 4730 | Check for $13,000 issued by Mr. Chang and payable to petitioner |
| 6/1/01 | Petitioner's checking account No. 4730 | Check for $13,000 issued by Firelands and payable to petitioner |
| 7/27/01 | Petitioner's checking account No. 4730 | Check for $2,000 issued by Mr. Chang and payable to petitioner |
| 8/15/01 | Petitioner's checking account No. 4730 | Cash of $5,000 |
| 8/15/01 | Petitioner's checking account No. 4730 | Check for $5,000 issued by Bank One, on behalf of Mr. Chang, and payable to petitioner |
| 12/5/01 | Petitioner's checking account No. 4730 | Cash of $9,000 |
| 12/12/01 | Petitioner's checking account No. 4730 | Cash of $9,980 |
| 12/13/01 | Petitioner's checking account No. 4730 | Cash of $9,980 |

We turn first to the check for $30,000 issued by Beneficial, the checks for $25,000 and $13,000 issued by Firelands, the check for $70,000 issued by Clyde-Findlay, the check for $4,100 issued by Leonard and Associates, and the checks for $450, $13,000, and $2,000 issued by Mr. Chang. The only evidence that petitioner presented to establish that the deposits of those checks are not includible in his income is copies of those checks and his own testimony on which we are unwilling to rely. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposits of those checks are not includible in his income for the respective taxable years at issue during which he made those deposits.

We turn now to the check for $14,000 issued by Mr. Wood and Ms. Wood. The only evidence that petitioner presented to establish that the deposit of the $14,000 check in question is not includible in his income is a copy of that check and his own testimony on which we are unwilling to rely. The check for $14,000 issued by Mr. Wood and Ms. Wood bears the following handwritten notation: "Loan on Houses". The record does not disclose who wrote that notation, when it was written, and what it means. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposit of the check for $14,000 issued by Mr. Wood and Ms. Wood is not includible in his income for his taxable year 2000.

We turn now to the check for $25,000 issued by Firelands. It was not until petitioner filed his opening brief that he alleges that the deposit of that check is not includible in his income because that check represented the proceeds of a certain car loan. The only evidence that petitioner presented to establish that allegation on brief is a copy of the $25,000 check in question. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposit of the check for $25,000 issued by Firelands is not includible in his income for his taxable year 2000.

We turn now to the check for $47,189.66 issued by Leonard and Associates that petitioner deposited into petitioner's checking account No. 4730 on November 1, 2000. Petitioner maintains that respondent erroneously included that deposit in his income. Petitioner is wrong. We have found that respondent did not include in petitioner's income for his taxable year 2000 the deposit of the check for $47,189.66 issued by Leonard and Associates.

We turn now to the check for $5,000 issued by Bank One on behalf of Mr. Chang ($5,000 Bank One check). Although petitioner did not place at issue at trial, and does not place at issue on brief, the deposit of $5,000 cash that he made into petitioner's checking No. account 4730 on the same day (i.e., August 15, 2001) on which he deposited the $5,000 Bank One check, we shall also

consider that cash deposit.[19]  We have found that on August 15, 2001, the date on which petitioner deposited both the $5,000 Bank One check and $5,000 cash, petitioner borrowed $10,000 from Mr. Chang.  It is petitioner's position that the deposit of the $5,000 Bank One check is not includible in his income because that check represented a personal loan from Mr. Chang to petitioner.  On the record before us, we find that the two deposits that petitioner made on August 15, 2001, of the $5,000 Bank One check and $5,000 cash represented the proceeds of the $10,000 loan that Mr. Chang made to him on that date.  On that record, we further find that those two deposits are not includible in petitioner's income for his taxable year 2001.

We turn now to the cash deposits of $9,000, $9,980, and $9,980 (petitioner's three 2001 cash deposits at issue).  It was not until petitioner filed his opening brief that he alleges that those cash deposits are not includible in his income because they represented loans from Reyanh Phung to petitioner.  In support of that allegation on brief, petitioner relies on the Amnesia Lounge security agreement that pertained to the $50,000 that petitioner borrowed from Reyanh Phung.  There is no evidence in the record

---

[19]The parties stipulated that respondent included in petitioner's income for each of the years at issue all of the deposits into petitioner's bank accounts during each of those years, except certain deposits that the parties stipulated.  The parties did not stipulate that respondent did not include in petitioner's income for his taxable year 2001 the deposit of $5,000 cash on Aug. 15, 2001.

establishing that petitioner's three 2001 cash deposits at issue represented part of the proceeds of that loan.  On the record before us, we find that petitioner has failed to carry his burden of establishing that those three 2001 cash deposits are not includible in his income for his taxable year 2001.

Alleged Refunds of Moneys Held in Escrow

It is petitioner's position that the following deposits are not includible in his income because those deposits represented refunds of petitioner's moneys held in escrow:

| Date of Deposit | Account Into Which Deposit Was Made | Item Deposited |
|---|---|---|
| 1/14/00 | Petitioner's checking account No. 5210 | Check for $1,713.83 issued by Countrywide and payable to petitioner |
| 1/31/00 | Petitioner's checking account No. 5210 | Check for $1,000 issued by CMACO Investments and payable to Seo & Leonard |
| 4/19/00 | Petitioner's checking account No. 5210 | Check for $168.95 issued by ABN-AMRO and payable to petitioner |
| 8/11/00 | Petitioner's checking account No. 4730 | Check for $608.16 issued by ABN-AMRO and payable to petitioner |
| 9/19/00 | Petitioner's checking account No. 4730 | Three checks, each for $450.61, issued by ABN-AMRO and payable to petitioner |
| 2/8/01 | Petitioner's checking account No. 4730 | Check for $1,592.82 issued by M&I Bank and payable to petitioner |
| 5/1/01 | Petitioner's checking account No. 4730 | Check for $741 issued by ABN-AMRO and payable to petitioner |
| 6/6/01 | Petitioner's checking account No. 4730 | Check for $177.47 issued by ABN-AMRO and payable to petitioner |
| 9/4/01 | Petitioner's checking account No. 4730 | Check for $31.02 issued by United Guaranty and payable to ABN-AMRO or petitioner |

We turn first to the check for $1,713.83 issued by Country-wide. The only evidence that petitioner presented to establish that the deposit of that check is not includible in his income is a copy of that check and his own testimony on which we are unwilling to rely. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposit of the check for $1,713.83 issued by Countrywide is not includible in his income for his taxable year 2000.

We turn now to the check for $1,000 issued by CMACO Investments and the check for $31.02 issued by United Guaranty. It was not until petitioner filed his opening brief that he alleges that the deposits of those checks are not includible in his income because those checks represented refunds of his moneys held in escrow. The only evidence that petitioner presented to establish that allegation on brief is copies of the check for $1,000 issued by CMACO Investments and the check for $31.02 issued by United Guaranty. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposits of those checks are not includible in his income for the respective taxable years at issue during which he made those deposits.

We turn now to the checks for $168.95, $608.16, and $177.47 issued by ABN-AMRO. Although petitioner claimed at trial that the deposits of those latter two checks are not includible in his income because those checks represented refunds of petitioner's

moneys held in escrow, it was not until petitioner filed his opening brief that he advances that claim with respect to the remaining check. Each of those three checks in question is payable to petitioner and bears the following computer-generated notation: "FOR PAYMENT OF ESCROW TO MORTGAGOR". We believe that ABN-AMRO generated that notation, that those checks represented payments of escrowed moneys to the mortgagor, and that petitioner was the mortgagor to which that notation referred. On the record before us, we find that the deposits of the checks for $168.95, $608.16, and $177.47 issued by ABN-AMRO are not includible in petitioner's income for the respective taxable years during which he made those deposits.

We turn now to the three checks, each for $450.61, issued by ABN-AMRO. The only evidence that petitioner presented to establish that the deposits of those checks are not includible in his income is copies of those checks and his own testimony on which we are unwilling to rely. The three checks, each for $450.61, issued by ABN-AMRO bear the following computer-generated notation: "FOR MISAPPLICATION REVERSAL". There is no reliable evidence in the record explaining what that notation means. On the record before us, we find that petitioner has failed to carry his burden of establishing that the three checks, each for

$450.61, issued by ABN-AMRO are not includible in his income for his taxable year 2000.

We turn now to the check for $1,592.82 issued by M&I Bank. It was not until petitioner filed his opening brief that he alleges that the deposit of that check is not includible in his income because that check represented a refund of his money held in escrow. The only evidence that petitioner presented to establish that allegation on brief is a copy of that check. The $1,592.82 check in question bears the following computer-generated notation: "OVERPAYMENT". There is no evidence in the record explaining what that notation means.[20] On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposit of the check for $1,592.82 issued by M&I Bank is not includible in his income for his taxable year 2001.

We turn now to the check for $741 issued by ABN-AMRO. The only evidence that petitioner presented to establish that the deposit of that check is not includible in his income is a copy of that check and his own testimony on which we are unwilling to rely. The $741 check in question bears the following computer-generated notation: "FOR PAYMENT OF MISCELLANEOUS ESCROW".

---

[20]If the notation "OVERPAYMENT" means that M&I Bank was refunding an overpayment of mortgage interest that petitioner had deducted for a prior taxable year, a question arises as to whether that refund constitutes income to petitioner.

There is no reliable evidence in the record explaining what that notation means.[21] On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposit of the check for $741 issued by ABN-AMRO is not includible in his income for his taxable year 2001.

Alleged Refunds of Certain Other Moneys

It is petitioner's position that the following deposits are not includible in his income because those deposits represented refunds of certain moneys that petitioner had paid to others:

| Date of Deposit | Account Into Which Deposit Was Made | Item Deposited |
| --- | --- | --- |
| 1/18/00 | Petitioner's checking account No. 5210 | Check for $83.62 issued by Farmers Insurance and payable to petitioner |
| 2/15/00 | Petitioner's checking account No. 5210 | Check for $269.86 issued by Farmers Insurance and payable to Innova Funding |
| 2/15/00 | Petitioner's checking account No. 5210 | Check for $19.21 issued by Dispatch Printing and payable to petitioner |
| 2/18/00 | Petitioner's checking account No. 5210 | Check for $152.66 issued by Farmers Insurance and payable to petitioner |
| 3/9/00 | Petitioner's checking account No. 5210 | Check for $151.76 issued by Farmers Insurance and payable to petitioner |
| 4/19/00 | Petitioner's checking account No. 5210 | Check for $550 issued by Franklin County and payable to Seo Investment Group |
| 6/19/00 | Petitioner's checking account No. 4730 | Check for $10 issued by Farmers Insurance and payable to petitioner |

---

[21]If the notation "FOR PAYMENT OF MISCELLANEOUS ESCROW" means that ABN-AMRO was making a payment of escrowed moneys to petitioner to which he was entitled as the seller of certain property, a question arises as to whether that payment constitutes income to petitioner.

| Date of Deposit | Account Into Which Deposit Was Made | Item Deposited |
|---|---|---|
| 6/19/00 | Petitioner's checking account No. 4730 | Check for $47.70 issued by Farmers Insurance and payable to petitioner |
| 6/19/00 | Petitioner's checking account No. 4730 | Check for $214.44 issued by Farmers Insurance and payable to petitioner |
| 7/7/00 | Petitioner's checking account No. 4730 | Check for $449.44 issued by Ricart and payable to Leonard and Associates |
| 7/10/00 | Petitioner's checking account No. 4730 | Check for $10 issued by Farmers Insurance and payable to petitioner |
| 7/10/00 | Petitioner's checking account No. 4730 | Check for $19.87 issued by Farmers Insurance and payable to petitioner |
| 9/29/00 | Petitioner's checking account No. 4730 | Check for $26 issued by Paul M. Herbert, Civil Account, Clerk of the Court, Franklin County Municipal Court, and payable to petitioner |
| 10/18/00 | Petitioner's checking account No. 4730 | Check for $599.68 issued by Ricart and payable to petitioner |
| 11/7/00 | Petitioner's checking account No. 4730 | Check for $65 issued by Charter Bank and payable to petitioner |
| 3/2/01 | Petitioner's checking account No. 4730 | Check for $155.42 issued by the City of Columbus and payable to petitioner |
| 3/6/01 | Petitioner's checking account No. 4730 | Check for $500 issued by Farmers Insurance and payable to petitioner |
| 3/19/01 | Petitioner's checking account No. 4730 | Check for $482.71 issued by Maguire and Schneider and payable to petitioner |
| 4/4/01 | Petitioner's checking account No. 4730 | Check for $43.31 issued by Farmers Insurance and payable to petitioner |
| 4/4/01 | Petitioner's checking account No. 4730 | Check for $500 issued by HER and payable to petitioner |
| 6/21/01 | Petitioner's checking account No. 4730 | Check for $522.11 issued by Farmers Insurance and payable to petitioner |

| Date of Deposit | Account Into Which Deposit Was Made | Item Deposited |
|---|---|---|
| 7/11/01 | Petitioner's checking account No. 4730 | Check for $228.61 issued by Farmers Insurance and payable to petitioner |
| 1/31/02 | Petitioner's checking account No. 4730 | Check for $317.44 issued by Farmers Insurance and payable to petitioner |
| 1/31/02 | Petitioner's checking account No. 4730 | Check for $124 issued by Paul M. Herbert, Clerk of Court, Criminal/Bail Account, Franklin County Municipal Court, and payable to petitioner |
| 3/28/02 | Petitioner's checking account No. 4730 | Check for $270.13 issued by Farmers Insurance and payable to petitioner |
| 4/9/02 | Petitioner's checking account No. 4730 | Check for $5.42 issued by American Electric Power and payable to petitioner |
| 12/10/02 | Petitioner's checking account No. 4730 | Check for $377.11 issued by Farmers Insurance and payable to petitioner |

We turn first to the 16 checks issued by Farmers Insurance (16 Farmers Insurance checks). It is petitioner's position that the deposits of the 16 checks in question are not includible in his income because those checks represented refunds of insurance premiums that he had overpaid. Petitioner testified with respect to all of the 16 Farmers Insurance checks, except (1) the check for $83.62 that he deposited into petitioner's checking account No. 5210 on January 18, 2000, (2) the check for $269.86 that he deposited into that account on February 15, 2000, (3) the check for $152.66 that he deposited into that account on February 18, 2000, and (4) the check for $151.76 that he deposited into that account on March 9, 2000. It was not until petitioner filed his

opening brief that he alleges that the deposits of those four checks are not includible in his income because those checks represented refunds of insurance premiums that he had overpaid. The only evidence that petitioner presented to establish that the deposits of the four of the 16 Farmers Insurance checks with respect to which he did not testify are not includible in his income is copies of those checks. The only evidence that petitioner presented to establish that the deposits of the 12 of the 16 Farmers Insurance checks with respect to which he testified are not includible in his income is copies of those checks and his own testimony on which we are unwilling to rely. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposits of the 16 Farmers Insurance checks are not includible in his income for the respective taxable years at issue during which he made those deposits.

We turn now to the check for $19.21 issued by Dispatch Printing. It was not until petitioner filed his opening brief that he alleges that the deposit of that check is not includible in his income because that check represented a refund of money that he prepaid for a certain delivery. The only evidence that petitioner presented to establish that allegation on brief is a copy of the $19.21 check in question. On the record before us, we find that petitioner has failed to carry his burden of estab-

lishing that the check for $19.21 issued by Dispatch Printing is not includible in his income for his taxable year 2000.

We turn now to the checks for $449.44 and $599.68 issued by Ricart (Ricart checks). It was not until petitioner filed his opening brief that he alleges that the deposits of those checks are not includible in his income because those checks represented refunds of deposits that were made with respect to certain car leases. The only evidence that petitioner presented to establish that allegation on brief is copies of the Ricart checks. On the record before us, we find that petitioner has failed to carry his burden of establishing that the respective deposits of the Ricart checks are not includible in his income for his taxable year 2000.

We turn now to the check for $65 issued by Charter Bank. It was not until petitioner filed his opening brief that he alleges that the deposit of the $65 check in question is not includible in his income because that check represented a "tax fee refund." The $65 check in question bears the following computer-generated notation: "TAX FEE REFUND". We believe that Charter Bank generated that notation and that that check represented a refund to petitioner of a certain tax fee. On the record before us, we find that the check for $65 issued by Charter Bank is not includible in petitioner's income for his taxable year 2000.

We turn now to the check for $155.42 issued by the City of Columbus.  It was not until petitioner filed his opening brief that he alleges that the deposit of that check is not includible in his income because that check represented a refund of money that he had paid with respect to a certain warrant.  The $155.42 check in question bears the following computer-generated notation:  "WARRANT TO THE CITY TREASURER".  We believe that the City of Columbus generated that notation and that that check represented a refund to petitioner of moneys that he had paid with respect to a "WARRANT TO THE CITY TREASURER" of Columbus, Ohio. On the record before us, we find that the deposit of the check for $155.42 issued by the City of Columbus is not includible in petitioner's income for his taxable year 2001.

We turn now to the check for $550 issued by Franklin County. It was not until petitioner filed his opening brief that he alleges that the deposit of that check is not includible in his income because that check represented a refund of money that he had advanced with respect to a certain bond.  The $550 check in question bears the following computer-generated notation: "WARRANT NUMBER 2000144137".  We believe that Franklin County generated that notation and that that check represented a refund to petitioner of moneys that he had paid with respect to a certain warrant.  On the record before us, we find that the

deposit of the check for $550 issued by Franklin County is not includible in petitioner's income for his taxable year 2000.

We turn now to the check for $26 issued by the Franklin County Municipal Court. It was not until petitioner filed his opening brief that he alleges that the deposit of that check is not includible in his income because that check represented a refund of money that he had paid with respect to a certain bond. The only evidence that petitioner presented to establish that allegation on brief is a copy of the $26 check in question. The $26 check in question reflects that that check was issued by Paul M. Herbert, Civil Account, Clerk of the Court, Franklin County Municipal Court. There is no evidence in the record explaining why that check was issued to petitioner. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposit of the check for $26 issued by the Franklin County Municipal Court is not includible in his income for his taxable year 2000.

We turn now to the check for $500 issued by HER. It was not until petitioner filed his opening brief that he alleges that the deposit of that check is not includible in his income because that check represented a refund of a deposit that he made with respect to a certain real estate offer. The only evidence that petitioner presented to establish that allegation on brief is a copy of the $500 check in question. On the record before us, we

find that petitioner has failed to carry his burden of establishing that the check for $500 issued by HER is not includible in his income for his taxable year 2001.

We turn now to the check for $482.71 issued by Maguire and Schneider. It was not until petitioner filed his opening brief that he alleges that the deposit of that check is not includible in his income because that check represented a refund of certain attorney's fees. The only evidence that petitioner presented to establish that allegation on brief is a copy of the $482.71 check in question. That check bears the following handwritten notation: "Refund". The record does not disclose who wrote that notation, when it was written, and what it means. On the record before us, we find that petitioner has failed to carry his burden of establishing that the check for $482.71 issued by Maguire and Schneider is not includible in his income for his taxable year 2001.

We turn now to the check for $124 issued by the Franklin County Municipal Court. It is petitioner's position that the deposit of that check is not includible in his income because that check represented a refund of money that he had paid with respect to a certain bond. The only evidence that petitioner presented to establish that position is a copy of that check and his own testimony on which we are unwilling to rely. The $124 check in question reflects that that check was issued by Paul M.

Herbert, Clerk of Court, Criminal/Bail Account, Franklin County Municipal Court. There is no reliable evidence in the record explaining why that check was issued to petitioner. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposit of the check for $124 issued by the Franklin County Municipal Court is not includible in his income for his taxable year 2002.

We turn now to the check for $5.42 issued by American Electric Power. It is petitioner's position that the deposit of that check is not includible in his income because that check represented a refund of a certain credit due to him. The check for $5.42 issued by American Electric Power bears the following computer-generated notation: "REFUNDING FINAL BILL CREDIT BALANCE ON ACCOUNT". We believe that American Electric Power generated that notation and that that check represented a refund of a credit that was due to petitioner from that utility company. On the record before us, we find that the check for $5.42 issued by American Electric Power is not includible in petitioner's income for his taxable year 2002.

Alleged Gifts

It is petitioner's position that the following deposits are not includible in his income because those deposits represented certain gifts to him:

| Date of Deposit | Account Into Which Deposit Was Made | Item Deposited |
|---|---|---|
| 12/21/00 | Petitioner's checking account No. 4730 | Check for $200 issued by Mr. Lo and Ms. Lo and payable to petitioner |
| 9/27/01 | Petitioner's checking account No. 4730 | Check for $100 issued by Mr. Lo and Ms. Lo and payable to petitioner |
| 12/27/02 | Petitioner's checking account No. 4730 | Check for $100 issued by Mr. Lo and Ms. Lo and payable to petitioner |

It was not until petitioner filed his opening brief that he alleges that the deposits of the checks in question issued by Mr. Lo and Ms. Lo are not includible in his income because those checks represented Christmas or birthday gifts to him. The only evidence that petitioner presented to establish that allegation on brief is copies of those checks. The check for $200 issued by Mr. Lo and Ms. Lo that petitioner deposited on December 21, 2000, bears the handwritten notation "Christmas 2000"; the check for $100 issued by Mr. Lo and Ms. Lo that petitioner deposited on September 27, 2001, bears the handwritten notation "B-day!"; and the check for $100 issued by Mr. Lo and Ms. Lo that petitioner deposited on December 27, 2002, bears the handwritten notation "X-mas!" The record does not disclose who wrote those notations and when they were written. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposits of the checks in question issued by Mr. Lo and Ms. Lo are not includible in his income for the taxable years at issue during which he made those deposits.

## Alleged Cash Advances From Credit Card Company

It is petitioner's position that the following deposits are not includible in his income because they represented cash advances to him from a company (namely, First USA) that issued a credit card to him:

| Date of Deposit | Account Into Which Deposit Was Made | Item Deposited |
|---|---|---|
| 1/7/00 | Petitioner's checking account No. 5210 | Check for $25 issued by First USA and payable to petitioner |
| 2/14/00 | Petitioner's checking account No. 5210 | Check for $25 issued by First USA and payable to petitioner |
| 9/15/00 | Petitioner's checking account No. 4730 | 20 checks, each for $25, issued by First USA and payable to petitioner |
| 11/7/00 | Petitioner's checking account No. 4730 | Check for $15.37 issued by First USA and payable to petitioner |

We note initially that the record does not establish that during the years at issue petitioner had a credit card that First USA had issued to him.

Petitioner testified with respect to all of the checks issued by First USA, except (1) the check for $25 that he deposited into petitioner's checking account No. 5210 on January 7, 2000, and (2) the check for $15.37 that he deposited into petitioner's checking account No. 4730 on November 7, 2000. It was not until petitioner filed his opening brief that he alleges that the deposits of those two checks are not includible in his income because they represented cash advances from First USA to him. The only evidence that petitioner presented to establish that the

deposits of the checks issued by First USA with respect to which he did not testify are not includible in his income is copies of those checks. The only evidence that petitioner presented to establish that the deposits of the checks issued by First USA with respect to which he testified are not includible in his income is copies of those checks and his own testimony on which we are unwilling to rely. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposits of the checks issued by First USA are not includible in his income for his taxable year 2000.

Alleged Proceeds From an Insurance Claim

It is petitioner's position that the following deposits are not includible in his income because those checks represented proceeds that he received as a result of certain insurance claims that he had filed with respect to certain property:

| Date of Deposit | Account Into Which Deposit Was Made | Item Deposited |
|---|---|---|
| 1/26/01 | Petitioner's checking account No. 4730 | Check for $4,150 issued by Farmers Insurance and payable to petitioner, AMRO Mortgage Group, and Leonard and Associates |
| 2/7/01 | Petitioner's checking account No. 4730 | Check for $3,056.17 issued by Farmers Insurance and payable to petitioner and Franklin Art Glass Studios, Inc. |

The only evidence that petitioner presented to establish that the deposits of the checks for $4,150 and $3,056.17 issued by Farmers Insurance are not includible in his income is copies

of those checks and his own testimony on which we are unwilling to rely. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposits of the checks for $4,150 and $3,056.17 issued by Farmers Insurance are not includible in his income for his taxable year 2001.

Alleged Proceeds From the
Refinancing of Certain Real Property

It is petitioner's position that the following deposits are not includible in his income because those deposits represented proceeds that he received from the refinancing of certain real property that he owned:

| Date of Deposit | Account Into Which Deposit Was Made | Item Deposited |
|---|---|---|
| 1/18/00 | Petitioner's checking account No. 5210 | Check for $72,084.96 issued by Midland Title and payable to Stephen T. Hutchinson |
| 12/14/00 | Petitioner's checking account No. 4730 | Check for $33,562.58 issued by Old Republic and payable to LA Construction |
| 4/5/01 | Petitioner's checking account No. 4730 | Check for $2 issued by Old Republic and payable to petitioner |

We turn first to the check for $72,084.96 issued by Midland Title. In support of his position that the deposit of the $72,084.96 check in question is not includible in his income, petitioner relies on a copy of that check and his own testimony on which we are unwilling to rely. Petitioner also appears to rely on a certain settlement statement (property settlement statement). We have found based on that settlement statement that (1) on December 23, 1999, petitioner borrowed a total of

$60,000 from Innova Funding as part of an agreement to refinance certain real property that he owned in Ohio; (2) after using most of the proceeds of that loan to pay certain of his obligations relating to the refinancing of that property petitioner received cash of $13,643.06; and (3) Midland Celtic Title acted as the settlement agent for purposes of the refinancing agreement. Neither the property settlement statement nor any other evidence in the record establishes that the check for $72,084.96 issued by Midland Title represented proceeds from the refinancing of certain property that petitioner owned. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposit of the check for $72,084.96 issued by Midland Title is not includible in his income for his taxable year 2000.

We turn now to the check for $33,562.58 issued by Old Republic. In support of his position that the deposit of the $33,562.58 check in question is not includible in his income because that check represented proceeds from the refinancing of certain real property that he owned, petitioner relies on a copy of that check and his own testimony on which we are unwilling to rely. Petitioner also appears to rely on a document relating to a certain mortgage (mortgage document). Consistent with that document, the parties stipulated that on October 31, 2000, petitioner borrowed $71,550 from Innova Funding. Neither the

mortgage document nor any other evidence in the record establishes that the check for $33,562.58 issued by Old Republic represented proceeds from the refinancing of certain real property that petitioner owned. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposit of the check for $33,562.58 issued by Old Republic is not includible in his income for his taxable year 2000.

We turn finally to the check for $2 issued by Old Republic. The only evidence that petitioner presented to establish that the deposit of that check is not includible in his income because that check represented proceeds from the refinancing of certain real property that he owned is a copy of that check and his own testimony on which we are unwilling to rely. On the record before us, we find that petitioner has failed to carry his burden of establishing that the deposit of the check for $2 issued by Old Republic is not includible in his income for his taxable year 2001.

Alleged Transfers Between Petitioner's Bank Accounts

It is petitioner's position that the following deposits are not includible in his income because those deposits represented transfers from one of petitioner's bank accounts to another one of petitioner's accounts:

| Date of Deposit | Account Into Which Deposit Was Made | Item Deposited |
|---|---|---|
| 3/6/01 | Petitioner's checking account No. 4730 | Transfer of $15,295.48 from a bank account not disclosed by the record |
| 1/8/02 | Petitioner's Amnesia Lounge account | Check for $1,000 issued by petitioner and payable to Huntington |
| 2/12/02 | Petitioner's Amnesia Lounge account | Check for $2,100 issued by petitioner and payable to Amnesia Lounge |
| 2/19/02 | Petitioner's Amnesia Lounge account | Check for $2,000 issued by petitioner and payable to Amnesia Lounge |

We turn first to the transfer of $15,295.48 into peti-
tioner's checking account No. 4730 from an account not disclosed
by the record.  It was not until petitioner filed his opening
brief that he alleges that that transfer is not includible in his
income because that deposit represented a transfer from one of
his bank accounts to another one of his bank accounts.  The
parties stipulated that the $15,295.48 deposit in question was a
"Transfer from Account 4730".  We have rejected that stipulation
as clearly contrary to the facts that we have found are estab-
lished by the record.[22]  We do not understand, and the record
does not disclose, how a transfer of $15,295.48 into petitioner's
checking account No. 4730 could be a transfer from that account.
On the record before us, we find that petitioner has failed to
carry his burden of establishing that the account from which the
transfer of $15,295.48 was made was an account of petitioner.  On

---

[22]See table note 3, supra p. 9.

that record, we further find that petitioner has failed to carry his burden of establishing that the transfer of $15,295.48 into petitioner's checking account No. 4730 is not includible in his income for his taxable year 2001.

We turn now to the checks issued by petitioner and payable to Amnesia Lounge (Amnesia Lounge checks) that petitioner deposited into petitioner's Amnesia Lounge account on January 8 and February 12 and 19, 2002. Petitioner maintains that respondent erroneously included those deposits in his income. Petitioner is wrong. We have found that respondent did not include in petitioner's income for his taxable year 2002 the deposits of the Amnesia Lounge checks.

Alleged Proceeds From a Home Equity Line of Credit

It is petitioner's position that respondent erroneously included in petitioner's income the deposit of the check for $18,000 issued by, and payable to, petitioner that he deposited into petitioner's checking account No. 4730 on November 30, 2000. Petitioner is wrong. We have found that respondent did not include in petitioner's income for his taxable year 2000 the deposit of the check for $18,000 issued by, and payable to, petitioner.

Alleged Check Drawn on Petitioner's Account

It is petitioner's position that the check for $450.61 issued on behalf of petitioner by the Direct Pay Service of Huntington National Bank (Direct Pay Service check) that he deposited into petitioner's checking account No. 4730 on August 25, 2000, is not includible in his income. That is because, according to petitioner, that check was drawn on his own bank account. The record establishes that the funds that Direct Bill Pay Service of Huntington National Bank used to issue the check for $450.61 that petitioner deposited into petitioner's checking account No. 4730 on August 25, 2000, were obtained from that account on May 1, 2000. The record, however, does not disclose why Standard Federal, the payee of the Direct Pay Service check, did not cash that check and why petitioner deposited that check into petitioner's checking account No. 4730, the account on which it was drawn.[23] Thus, we are unable to conclude on the record before us that the deposit of the Direct Pay Service check is not includible in petitioner's income. On the record before us, we find that petitioner has failed to carry his burden of establishing that the Direct Pay Service check is not includible in his income for his taxable year 2000.

---

[23]If Standard Federal was required to pay certain income to petitioner and if, instead of paying him that income, it returned the Direct Pay Service check to him, a question arises as to whether that check constitutes income to petitioner.

Alleged Gambling Losses

As we understand it, it is petitioner's position that he incurred certain gambling losses for each of his taxable years 2000, 2001, and 2002 and that therefore he is not liable for the deficiency that respondent determined for each of those years.

Petitioner is entitled for each of the years at issue to deduct gambling losses only to the extent of his gambling winnings for each of those years. See sec. 165(d). In the notice, respondent determined that petitioner has income from gambling winnings only for petitioner's taxable year 2000. On the record before us, we find that petitioner has failed to carry his burden of establishing that he incurred any gambling losses during any of the taxable years at issue that would result in his not being liable for the respective deficiencies that respondent determined for those years.

Unreported Interest Income

Petitioner argues for the first time on brief that he is not liable for tax on the interest income that respondent determined for each of his taxable years 2000 and 2001. Petitioner makes no argument, and offered no evidence at trial, in support of that position. On the record before us, we find that petitioner has failed to carry his burden of establishing that he is not liable for tax on the interest income that respondent determined for each of his taxable years 2000 and 2001.

Additions to Tax

It is respondent's position that petitioner is liable for each of his taxable years 2000, 2001, and 2002 for additions to tax under sections 6651(a)(1) and (2) and 6654(a).

Section 6651(a)(1) imposes an addition to tax for failure to file timely a return.[24] Section 6651(a)(2) imposes an addition to tax for failure to pay timely the amount shown as tax in a return.[25] The respective additions to tax under section 6651(a)(1) and (2) do not apply if the respective failures to file timely and to pay timely are due to reasonable cause, and not willful neglect. Sec. 6651(a)(1) and (2). Section 6654(a) imposes an addition to tax in the case of an underpayment of estimated tax by an individual.[26] The addition to tax under that

---

[24]The addition to tax imposed under sec. 6651(a)(1) is equal to 5 percent of the amount of tax required to be shown in the return, with an additional 5 percent to be added for each month or partial month during which the failure to file timely a return continues, not to exceed 25 percent in the aggregate. As pertinent here, the addition to tax imposed under sec. 6651(a)(1) is reduced by the amount of the addition to tax imposed under sec. 6651(a)(2) for each month or partial month to which additions to tax under sec. 6651(a)(1) and (2) apply. See sec. 6651(c).

[25]The addition to tax imposed under sec. 6651(a)(2) is equal to 0.5 percent of the amount shown as tax in the return, with an additional 0.5 percent to be added for each month or partial month during which the failure to pay the amount shown as tax in the return continues, not to exceed 25 percent in the aggregate.

[26]For purposes of sec. 6654(a), it is necessary to determine whether there is an underpayment of a required installment of estimated tax. See sec. 6654(a) and (b). In this connection, the amount of any required installment is 25 percent of the
(continued...)

section is mandatory unless petitioner qualifies under one of the exceptions in section 6654(e).[27]

Respondent must carry the burden of production with respect to the additions to tax under sections 6651(a)(1) and (2) and 6654(a) that respondent determined for each of petitioner's taxable years 2000, 2001, and 2002.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  To satisfy respondent's burden of production, respondent must come forward with "sufficient evidence indicating that it is appropriate to impose" the additions to tax.  Higbee v. Commissioner, supra at 446.

---

[26](...continued)
required annual payment.  Sec. 6654(d)(1)(A).  The required annual payment is equal to the lesser of (1) 90 percent of the tax shown in the return for the taxable year or, if no return was filed, 90 percent of the tax for such year, or (2) if the individual filed a return for the preceding taxable year, 100 percent of the tax shown in such return.  Sec. 6654(d)(1)(B).

[27]Sec. 6654(e) provides that no addition to tax shall be imposed under sec. 6654(a) for any taxable year if (1) the tax shown in the return for such taxable year (or, if no return is filed, the tax), reduced by the credit allowable under sec. 31 is less than $1,000, sec. 6654(e)(1); (2) the preceding taxable year was a taxable year of 12 months, the individual did not have any liability for such preceding taxable year, and the individual was a citizen or resident of the United States throughout such preceding taxable year, sec. 6654(e)(2); (3) the Secretary of the Treasury determines that by reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax would be against equity and good conscience, sec. 6654(e)(3)(A); or (4) the Secretary determines that during the taxable year for which the estimated payments are required or in the taxable year preceding such taxable year, the taxpayer retired after having attained the age of 62 or became disabled and the underpayment of any estimated tax was due to reasonable cause and not willful neglect, sec. 6654(e)(3)(B).

Although respondent bears the burden of production with respect to the additions to tax under sections 6651(a)(1) and (2) and 6654(a) that respondent determined for each of petitioner's taxable years 2000, 2001, and 2002, respondent "need not introduce evidence regarding reasonable cause * * * or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues." Id. at 446.

We turn first to the addition to tax under section 6651(a)(1). We have found that petitioner did not file a return for each of his taxable years 2000, 2001, and 2002. On the record before us, we find that respondent has carried respondent's burden of production under section 7491(c) with respect to the addition to tax under section 6651(a)(1) that respondent determined for each of those years.

Petitioner's only argument on brief with respect to the addition to tax under section 6651(a)(1) that respondent determined for each of his taxable years 2000, 2001, and 2002 is that he is not liable for that addition to tax because he "incurred losses in those years". We have sustained virtually all of respondent's determinations in the notice. As a result, petitioner does not have a loss for any of his taxable years 2000, 2001, and 2002. On the record before us, we find that petitioner has failed to carry his burden of establishing that he is not

liable for each of his taxable years 2000, 2001, and 2002 for the addition to tax under section 6651(a)(1).

We turn now to the addition to tax under section 6651(a)(2) that respondent determined for each of petitioner's taxable years 2000, 2001, and 2002. That section applies only in the case of an amount of tax shown in a return. Cabirac v. Commissioner, 120 T.C. 163, 170 (2003). For purposes of section 6651(a)(2), a return prepared by the Commissioner under section 6020(b) is treated as the return filed by the taxpayer. Sec. 6651(g)(2); Cabirac v. Commissioner, supra at 170. Petitioner did not file a return for each of his taxable years 2000, 2001, and 2002. Respondent prepared a substitute for return under section 6020(b) for each of those years. The respective substitutes for returns that respondent prepared under section 6020(b) for the years at issue showed (1) for 2000 total tax of $251,430, (2) for 2001 total tax of $132,318, and (3) for 2002 total tax of $51,412. We have found that petitioner failed to pay timely the tax shown in each of those substitutes for returns. On the record before us, we find that respondent has carried respondent's burden of production under section 7491(c) with respect to the addition to tax under section 6651(a)(2) that respondent determined for each of petitioner's taxable years 2000, 2001, and 2002.

Petitioner advances the same argument on brief with respect to the addition to tax under section 6651(a)(2) that he advances

with respect to the addition to tax under section 6651(a)(1). That is to say, according to petitioner, he is not liable for each of his taxable years 2000, 2001, and 2002 for the addition to tax under section 6651(a)(2) because he "incurred losses in those years".  As discussed above, we have sustained virtually all of respondent's determinations in the notice.  As a result, petitioner does not have a loss for any of his taxable years 2000, 2001, and 2002.  On the record before us, we find that petitioner has failed to carry his burden of establishing that he is not liable for each of his taxable years 2000, 2001, and 2002 for the addition to tax under section 6651(a)(2).

We turn finally to the addition to tax under section 6654(a) that respondent determined for each of petitioner's taxable years 2000, 2001, and 2002.  We have found (1) that the substitute for return for 2000 showed that petitioner's total tax for his taxable year 1999 was $9,825, (2) that petitioner did not file a return for each of his taxable years 2000, 2001, and 2002, and (3) that petitioner did not make any estimated tax payments for his taxable years 2000, 2001, and 2002.  On the record before us, we find that respondent has carried respondent's burden of production under section 7491(c) with respect to the addition to tax under section 6654(a) that respondent determined for each of petitioner's taxable years 2000, 2001, and 2002.

Petitioner does not argue, and the record does not establish, that he qualifies under any of the exceptions listed in section 6654(e).  On the record before us, we find that petitioner is liable for the addition to tax under section 6654(a) that respondent determined for each of his taxable years 2000, 2001, and 2002.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.[28]

To reflect the foregoing and the concessions of respondent,

<u>Decision will be entered under</u>

<u>Rule 155</u>.

---

[28]We note that one of petitioner's arguments on brief appears to be that he is entitled to deduct for his respective taxable years 2000, 2001, and 2002 mortgage interest of $84,176, $109,489, and $27,587.  However, in the notice respondent allowed those amounts of mortgage interest deductions for those respective taxable years.